**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KEVIN MINGLE,

      Plaintiff,

v.                              CASE NO. 3:09-cv-248-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his claim for disability benefits. Plaintiff filed a memorandum in support of the complaint (Doc. #13). Defendant filed a memorandum in support of the Commissioner's decision to deny disability benefits (Doc. #14). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## I. Procedural History

On February 9, 2006, Plaintiff Kevin Mingle ("Plaintiff") filed an application for Period of Disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability as of January 1, 2003 (Tr. 125-32).  Plaintiff has a date last insured of December 31, 2004 (Tr. 10).[1]  Plaintiff requested a hearing before Administrative Law Judge JoAnn L. Anderson  (the "ALJ") and a hearing was held on January 31, 2008 (Tr. 19-65).   On April 23, 2008, the ALJ issued an unfavorable decision (Tr. 7-18). Subsequently, the Appeals Council denied Plaintiff's request for review (Tr. 1-5).  Plaintiff now appeals.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.

---

[1]Plaintiff's last date of disability insurance status coverage was December 31, 2004.  Plaintiff, therefore, must establish that his disability began on or before December 31, 2004 (*see* 20 C.F.R. §§ 404.130; 404.131; 404.315; and 404.316).  SSI benefits may only be awarded from the date of Plaintiff's application.  20 C.F.R. § 416.501.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[2]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition.  As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. that pertain to part 404 and disability insurance benefits.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. § 404.1512(c).

### III. Background Facts

Plaintiff was born on March 4, 1963 (Tr. 30). Thus, at the time of the ALJ's decision Plaintiff was forty-five (45) years old (Tr. 30). Plaintiff has a high school education and past relevant work experience as a landscape laborer, bridge carpenter, and grinding machine operator (Tr. 30-33, 214). After reviewing the entire record and the testimony from the

4

January 31, 2008 hearing, the ALJ found Plaintiff has the following severe impairments: (1) degenerative disc disease of the lumbar spine; (2) status post laminectomy in 1995; and (3) degenerative joint disease of the knees (Tr. 12).

**A. Medical Evidence**

Plaintiff alleges disability as of July 4, 2003 (Tr. 30).  By way of background, Plaintiff maintains he began experiencing back pain, with radiation to both legs, approximately two decades ago after he lifted a copier machine at work (Tr. 228).  With rest, however, Plaintiff's condition apparently improved (Tr. 228).  In the early 1990's, while working in the construction industry, Plaintiff apparently re-injured his back (Tr. 228).  Then, in 1995, Plaintiff lifted a box at home and again experienced pain in his back that radiated through his legs (Tr. 228).  After this injury, Plaintiff's pain seems to have persisted for many months (Tr. 228).

Consequently, on May 16, 1995, Plaintiff underwent a neurological evaluation by Dean Lohse, M.D. ("Dr. Lohse") (Tr. 228).  Dr. Lohse's physical exam was notable for positive straight leg raises bilaterally (Tr. 228-29).  In addition, forward bending from a standing position produced low back pain and left sciatica (Tr. 229).[3]  On that same day, Dr. Lohse reviewed a MRI and CT scan from Health Images of Jacksonville that demonstrated a small disc herniation at Plaintiff's L5-S1 (Tr. 229).  Dr. Lohse determined Plaintiff was a reasonable candidate for surgery (Tr. 229).

On June 7, 1995, Plaintiff underwent a left L5-S1 hemilaminotomy at Orange Park

---

[3]Sciatica is characterized by lower back and hip pain that radiates down the back of the thigh into one's leg, usually due to a herniated lumbar disk. STEDMAN'S MEDICAL DICTIONARY 1391 (25th ed.1990).

Medical Center (Tr. 218-25).  Plaintiff's discharge diagnosis was herniated lumbar disc, L5-S1, left (Tr. 218).  After the surgery, Dr. Lohse noted that Plaintiff continued to complain of pain (Tr. 230-35).  Despite Plaintiff's complaints, Dr. Lohse recorded normal neurological examinations (Tr. 230-34).  A subsequent MRI taken in August 1995 showed no evidence of recurrent disc protrusion (Tr. 230-34).  Eventually, Plaintiff recovered enough to return to work in September 1995 (Tr.  230-35).

On August 26, 1996, approximately one year after the aforementioned surgery, Plaintiff began experiencing recurrent low back pain with radiation to the left leg (Tr. 237).  Consequently, Plaintiff returned to Dr. Lohse (Tr. 237).  Upon examination, forward bending and straight leg raises caused pain in Plaintiff's left leg (Tr. 237).  Dr. Lohse noted that a MRI scan conducted on August 15, 1996, demonstrated post operative changes at the L5-S1 level with a degenerative L5-S1 disc and epidural scarring on the left side; however, the MRI revealed no evidence of residual disc herniation or other significant abnormality (Tr. 236-37).   Dr. Lohse recommended that Plaintiff take nonsteroidal anti-inflammatory medication ("NSAIDs") and engage in regular stretching exercises (Tr. 237).  Dr. Lohse concluded the examination by noting that he did not believe further surgical intervention was warranted (Tr. 237).

In May 2000, Plaintiff presented to Fady Bahri, M.D. ("Dr. Bahri") for complaints of left knee pain (Tr. 240-52).  Plaintiff reported to Dr. Bahri that he was involved in an automobile accident on April 21, 2000, and that he sustained a substantial knee laceration therefrom  (Tr. 240).  After examining Plaintiff and reviewing the results from a MRI taken

on May 5, 2000, Dr. Bahri diagnosed a Baker's cyst of Plaintiff's left knee (Tr. 244-42).[4]  Dr. Bahri referred Plaintiff to physical therapy and pain management (Tr. 242-46).   In June 2000, Plaintiff reported pain in his left knee, but physical therapy was apparently helping and he had full range of motion in his left knee (Tr. 248).  By the next month, Plaintiff was capable of full weight bearing without support, had full range of motion in his left knee, and x-ray results were unremarkable (Tr. 250).  Dr. Bahri recommended that Plaintiff continue to work, continue physical therapy and home exercise, and apply ice to his knee as needed (Tr. 250).  Plaintiff was then released to return to work (Tr. 250).

On September 7, 2000, Plaintiff again presented to Dr. Bahri (Tr. 251).  Plaintiff reported that he could not work due to knee pain, which he described as mild and intermittent (Tr. 251).  Dr. Bahri recommended that Plaintiff participate in a functional capacity evaluation in order to determine Plaintiff's capabilities with respect to working, and then to return for a follow-up visit (Tr. 251).  Plaintiff never returned to Dr. Bahri's office (Tr. 251).[5]

Plaintiff's treating physician from January 30, 2002 to January 7, 2008 was Nathan Perry, M.D. ("Dr. Perry") (Tr. 253-389).  Dr. Perry treated Plaintiff for numerous impairments during said time period, including, *inter alia*, sinusitis, seasonal rhinitis, degenerative joint disease of the knees, depression, and anxiety (Tr. 253-313, 334-40,  376-89). In treating

---

[4]A Baker's cyst is a fluid-filled cyst that causes a bulge and a feeling of tightness behind one's knee.  A Baker's cyst usually results from a problem in the knee joint, such as arthritis or a cartilage tear.  Treating the underlying problem usually provides relief.  MAYO CLINIC, http://www.mayoclinic.com/health/bakers-cyst/DS00448 (last visited September 3, 2010).

[5]It should be noted that it does not appear from the record that Plaintiff ever participated in the functional capacity evaluation that was recommended by Dr. Bahri.

these ailments, Dr. Perry prescribed Plaintiff medications, such as Methadone,[6] Soma,[7] Xanex,[8] and occasionally Mobic and Celebrex,[9] Valium,[10] and Nasonex[11] (Tr. 253-313, 334-40, 376-89).

Throughout his treatment by Dr. Perry, Plaintiff reported levels of pain that appear to have waxed and waned (*see* Tr. 253-313,. 334-40, 376-89).  For instance, on January 21, 2002, Plaintiff reported "not feeling so well—tired and run down" (Tr. 254).  On April 1, 2002, Plaintiff reported that he felt "generally ok" and that his medications were "helping tremendously" (Tr. 255).  On May 31, 2002, Plaintiff reported his neck was "stiff" from "sleeping wrong" (Tr. 258).  On July 26, 2002, Plaintiff complained about his sinuses and stated that he was working but that he was "fired after only a couple of days of work" (Tr. 262).  On September 25, 2002, Plaintiff reported that he was "generally ok" (Tr. 264).  On December 20, 2002, Plaintiff reported that his knees were hurting "a little more this week," and that his "meds [were] helping but [his] pain [was] still pretty severe" (Tr. 267).

---

[6]Methadone is a narcotic pain reliever similar to morphine.  http://www.drugs.com/methadone.html (last visited September 3, 2010).

[7]Soma is a muscle pain relaxer that is used together with rest and physical therapy to treat injuries and other painful musculoskeletal diseases.  http://www.drugs.com/soma.html (last visited September 3, 2010).

[8]Xanex is in a group of drugs called benzodiazepines, which affect chemicals in the brain that may become unbalanced.  Xanex is generally used to treat anxiety disorders, panic disorders, and anxiety caused by depression.  http://www.drugs.com/xanax.html (last visited September 3, 2010).

[9]Mobic and Celebrex are used to treat arthritic pain and inflamation. http://www.drugs.com/mobic.html; http://www.drugs.com/celebrex.html (last visited September 3, 2010).

[10]Like Xanex, Valium is in a group of drugs called benzodiazepines, which affect chemicals in the brain that may become unbalanced.  Valium can be used to treat anxiety disorders; however it is also used to treat agitation, shakiness, and hallucinations during alcohol withdrawal.  It can also relieve certain types of muscle pain.  http://www.drugs.com/valium.html (last visited September 3, 2010).

[11]Nasonex is used to treat and prevent nasal symptoms caused by year-round allergies.  It also prevents the release of substances in the body that cause inflamation. http://www.drugs.com/nasonex.html (Last visited September 3, 2010).

On February 21, 2003, Plaintiff stated that his pain was persisting, but that his medications were helping (Tr. 268).  On May 21, 2003, Plaintiff reported that his "meds [were] helping a lot" (Tr. 271).  On June 20, 2003, Plaintiff stated that his knee was hurting (Tr. 272).  The following month, Plaintiff reported that his "knee [was] hurting really bad lately" (Tr. 273).  On October 15, 2003, Plaintiff was "generally ok" (Tr. 277).  On February 9, 2004, Plaintiff reported that he was "still unable to work" (Tr. 280).  On June 7, 2004, Plaintiff was "generally ok" (Tr. 285).  On July 7, 2004, Plaintiff's "knees [were] doing pretty good" (Tr. 286).

On April 29, 2005, Plaintiff complained that his "sinuses [were] really bad" (Tr. 256).  On September 16, 2005, Plaintiff stated that his back and knee were "sore" (Tr. 304).  On October 13, 2005 Plaintiff reported, "not feeling so well—sinuses not so good" (Tr. 305).  On November 11, 2005, Plaintiff told Dr. Perry he was feeling "generally okay," and noted that his medications were "helping" (Tr. 306).  On January 5, 2006, Plaintiff reported that he was "achy and stiff" and that he could "hardly get out of bed in the morning" (Tr. 308).  On February 2, 2006, Plaintiff reported feeling "generally ok with the help of meds" (Tr. 309).  On June 23, 2006, Plaintiff told Dr. Perry he was mowing the lawn and felt pain in his left knee (Tr. 334).  On June 20, 2007, Plaintiff stated he was "doing well" (Tr. 383).  And finally, from July 2007 through January 7, 2008, Plaintiff reported that he was generally feeling "ok" with the help of his medications (see Tr. 376-82).

On August 4, 2006, Plaintiff underwent a consultative examination by Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock") at the request of the Social Security Administration (Tr. 316-24).  Upon examination, Plaintiff appeared to be in mild acute distress (Tr. 317).

9

Plaintiff's gait was abnormal with limping on the right and he could not walk on his heels or toes (Tr. 317). Plaintiff was unable to squat (Tr. 317). Plaintiff's cervical spine showed decreased flexion, extension, lateral flexion bilaterally, and decreased rotatory movement bilaterally (Tr. 318). His lumbar spine showed decreased flexion, extension, lateral flexion bilaterally, and decreased rotatory movement bilaterally (T. 318). There were paraspinal muscle spasms, most accentuated in the lower lumbar area (Tr. 318). Straight leg raises were positive with full range of motion of the shoulders, elbows, forearms, and wrists bilaterally (Tr. 218). Plaintiff had decreased range of motion of his hips and knees bilaterally (Tr. 318). Deep tendon reflexes were physiologic in the upper extremities, but decreased in the lower extremities (Tr. 318). X-rays taken that day of Plaintiff's spine were normal and x-rays taken of his knees showed no bony pathology (Tr. 318).

Dr. Harper-Nimock observed that Plaintiff had difficulties getting on and off the examination table and that he walked with a limp; however, she noted he walked without an assistive device and that he did not need assistance changing his clothes for the examination (Tr. 317). Dr. Harper-Nimock's diagnoses were history of degenerative disc disorder, history of degenerative joint disorder, history of tobacco abuse, and history of ethanol abuse (Tr. 319). Dr. Harper-Nimock reported that Plaintiff would have mild to moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting (Tr. 319).

On January 2, 2007, Dr. Perry completed a Treating Source Mental Health Report, wherein he noted that Plaintiff's mood was depressed and that his affect was flat (Tr. 341-43). Dr. Perry diagnosed depression secondary to chronic pain with anxiety features (Tr. 341). Dr. Perry stated that Plaintiff could not perform physical work and that his pain

interfered with his concentration to the extent that he could not even perform a "desk job" (Tr. 341).   On January 24, 2008, Dr. Perry completed a Physical Residual Functional Capacity ("RFC") Questionnaire, wherein Dr. Perry indicated Plaintiff is completely unable to work (Tr. 369-73).

In said RFC Questionnaire, Dr. Perry noted that he has treated Plaintiff monthly to bimonthly since May of 1993 for anxiety disorder, lumbar disc disease, chronic rhinitis, chondromalacia patella of the knees, and depression (Tr. 369).[12]  Dr. Perry indicated that x-rays and a MRI objectively confirm a bulging disc in Plaintiff's lumbar spine as well as degeneration of both knees (Tr. 369).[13]  Dr. Perry also stated that Plaintiff's depression and anxiety affect his physical condition and are severe enough to frequently interfere with his attention and concentration and, therefore, Plaintiff was incapable of even performing low stress jobs (Tr. 370).

Dr. Perry noted that Plaintiff could sit for twenty (20) minutes at a time, stand for fifteen (15) minutes at a time, sit, stand, or walk less than two (2) hours in an eight-hour workday, and that he also must include thirty (30) minutes of periodic walking in an eight-hour workday (Tr. 371).   When asked whether Plaintiff needed a job that permits shifting at will from sitting, standing, or walking, Dr. Perry concluded that the question was not applicable because Plaintiff's impairments "prevent work" (Tr. 371).   Dr. Perry further reported that Plaintiff could occasionally lift ten (10) pounds, would need to use an assistive

---

[12]It should be noted that the record only contains monthly to bimonthly treatment records from Dr. Perry beginning in January 2002 (see Tr. 253-315, 334-43, 366-68, 369-89).

[13]The Court would note that it is unclear as to which MRI Dr. Perry refers because Dr. Perry did not reference a specific MRI and the medical record does not otherwise reveal that Dr. Perry ever ordered a MRI scan of Plaintiff.

device such as a cane in order to walk, and that he should never twist, stoop, bend, crouch, or climb (Tr. 372).  Dr. Perry also noted that Plaintiff must lie down for four (4) hours during a normal eight-hour work day (Tr. 373).  Due to Plaintiff's impairments, Dr. Perry stated that Plaintiff would likely be absent from work at least four (4) days per month (Tr. 372).  Dr. Perry concluded, based on his fifteen (15) years of treating Plaintiff, that Plaintiff is permanently and totally disabled (Tr. 373).  In a supplemental statement to the RFC Questionnaire, dated January 30, 2008, Dr. Perry answered that Plaintiff's symptoms were present as of January 1, 2003 (Tr. 366).

At Plaintiff's hearing on January 31, 2008, Plaintiff stated that he lived with his parents and that he last worked for an employer in 2001 (Tr. 37).  Plaintiff noted that he attempted to perform self-employment but that he had difficulties with this because of his back (Tr. 37-38).  Plaintiff testified that he experiences back pain, which radiates into his legs, and knee pain (Tr. 39).  He noted that he took Methadone and Soma, but that these medications did not really relieve his pain (Tr. 40).  Plaintiff stated that he is able to sit for fifteen (15) to twenty (20) minutes at a time and that he can stand for thirty (30) minutes to an hour (Tr. 42).  Plaintiff stated that Dr. Perry recommended he see a specialist, but that he was unable to do so due to a lack of financial resources (Tr. 45).[14]  Plaintiff testified that he would "really like to go back to work" (Tr. 45).  Further, Plaintiff stated that he lies down for four (4) to six (6) hours in an eight-hour time period and that he does not often drive because of his medications (Tr. 47-49).

---

[14]In should be noted that in Dr. Harper-Nimock's August 4, 2006 report, *supra*, she states that Plaintiff reported seeing an orthopedic surgeon and that Plaintiff was awaiting an assessment (Tr. 316).

**B. The ALJ's Decision**

In her opinion, dated April 23, 2008, the ALJ found Plaintiff suffered from degenerative disc disease, status post laminectomy in 1995, and degenerative joint disease of the knees (Tr. 12).  The ALJ found Plaintiff's aforementioned impairments to be severe within the meanings of the Regulations (Tr. 12).  The ALJ went on to find, however, that Plaintiff's impairments, either alone or in combination, did not meet or equal an impairment listed in 20 C.F.R. 404 App'x 1 Sub. P (the "Listings") (Tr. 15).

After review of the entire record, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work (Tr. 15).[15]  Specifically, the ALJ found Plaintiff can only sit or stand for a maximum of thirty (30) minutes at a time, and can occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 15).  The ALJ additionally found that Plaintiff must avoid working at heights (Tr. 15).

After determining Plaintiff's RFC and taking testimony from vocational expert, Dee Locascio (the "VE"), the ALJ found Plaintiff was unable to perform his past relevant work as a landscape laborer, bridge carpenter, or grinding machine operator  (Tr. 17).  The ALJ did, however, find that despite Plaintiff's work restrictions he could adjust to other work that exists in substantial numbers in the national and local economy (Tr. 17).  Relying on the testimony of the VE, the ALJ found that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform the occupations of food and beverage order clerk; telephone quotation clerk; and call out operator (Tr. 18, 56-59).  *See* UNITED

---

[15]Sedentary work involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 CFR § 404.1567(a).

STATES DEP'T OF LABOR, *Dictionary of Occupational Titles* §§ 209.567-014, 237.367-046, 237.367-014 (4th Ed. 1991).   Based in part on the VE's testimony, and after finding Plaintiff's allegation that he is unable to perform all work was unsupported by the record evidence as a whole, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act ("the Act") (Tr. 18).

## IV. Discussion

Plaintiff argues that the ALJ erred by failing to properly evaluate the medical opinion evidence offered by Dr. Perry, Plaintiff's treating physician (Doc. #13 at 1).   More particularly, Plaintiff argues the ALJ erred by not attributing substantial or controlling weight to the opinions offered by Dr. Perry and that the ALJ's reasons for not attributing such weight to Dr. Perry's opinions were insufficient (Doc. # 13 at 10).   The undersigned is not persuaded for the reasons that follow.

The Regulations provide that, generally, more weight should be given to the opinion of a medical source who has examined a claimant than to the opinion of a non-examining source.   20 C.F.R. § 404.1527(d)(1).   The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians.   Specifically, the Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

14

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is due to be afforded great weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[16] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician.  20 C.F.R. § 404.1527(d)(2)-(5).

In addition, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).  The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is (1) not bolstered by the evidence, (2) contrary to the evidence, or (3) inconsistent with the treating physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Moreover, an ALJ must state with particularity the weight given to the various medical opinions and the reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 279-89 (11th

---

[16]Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion.  20 C.F.R. § 404.1527(d)(2)(i).

Cir. 1987).

A treating source opinion is only entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Edwards*, 937 F.2d at 582. Further, the ALJ may reject an opinion that lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings. *Bloodsworth*, 703 F.2d at 1240. The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

Here, the ALJ's opinion reveals that she reviewed all the medical records provided by Plaintiff (*see* Tr. 12). In addition, the ALJ provided three reasons for assigning Plaintiff's treating physician, Dr. Perry, less than substantial or controlling weight (Tr. 16). Plaintiff, however, argues that the reader of the ALJ opinion is left to guess what level of weight the ALJ assigned to Dr. Perry's opinions because the ALJ merely stated that she gave Dr. Perry's opinions "appropriate weight" (Doc. #13 at 16). *See Sharfarz*, 825 F.2d at 279 (finding the ALJ is "required to state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor"). In certain circumstances, however, the ALJ's failure to strictly comply with this requirement may be deemed harmless error. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) ("An ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will

stand.") (*citations omitted*);[17] *see also Miller v. Barnhart*, 182 F. App'x 959, 964 (11th Cir. 2006) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion).

Courts have generally found that an ALJ's failure to state what weight is afforded a particular piece of medical opinion evidence is harmless when the ALJ has relied upon other opinion evidence which is consistent with the omitted evidence or when the omitted opinion is consistent with the ALJ's ultimate findings. *See, e.g., Caldwell*, 261 F. App'x at 191; *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005).

In addition, an ALJ can achieve the goals established by the Regulations, without formal compliance, by providing sufficient reasons for the implicit rejection of the omitted opinion by attacking its supportability or consistency with the record as a whole. *Oswald v. Astrue*, No. 2:08cv898-WC, 2009 WL 3379853, *6 (M.D. Ala. Oct. 19, 2009) ("the Eleventh Circuit appears to have recognized that such 'implicit' rejection of treating source opinion evidence is viable provided that the ALJ articulates the reasons for affording the omitted opinion less weight and such reasons are supported by the record") (*citing Snyder v. Comm'r of Soc. Sec.*, 330 F. App'x 843, 847 (11th Cir. 2009)); *see also Overbaugh v. Astrue*, No. 6:07-CV-0261-NAM/DEP, 2010 WL 1171203, *5 (N.D.N.Y. Mar. 22, 2010) ("given the lack of evidence supporting the [physician's] opinion, the ALJ's failure to specifically state the weight afforded [the] opinion was harmless error"); *cf. Correll v. Comm'r of Soc. Sec.*, No. 6:08-cv-208-Orl-GJK, 2009 WL 1587404, *11 (M.D. Fla. June 5, 2009) ("[w]hile the ALJ's failure to specify the weight given to [the doctor's] opinions *and*

---

[17]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

*the reasons therefore* constitutes reversible error, the crucial reason for said reversal is not merely formulaic, but rather to insure that substantial evidence supports the ALJ's decision") (*emphasis added*).

In this instance, the ALJ primarily relied on the opinions of two physicians in making her residual functional capacity ("RFC") determination (Tr. 16). Those physicians were Dr. Perry (Plaintiff's treating physician) and Dr. Harper-Nimock (Tr. 16). Even though the ALJ stated that she gave "appropriate weight" to the opinions of both Dr. Perry and Dr. Harper-Nimock, it is implicit in the ALJ's decision that she gave only *some* weight to Dr. Perry's opinions while attributing controlling weight to the opinion of Dr. Harper-Nimock (*see* Tr. 13-17).

To illustrate, it is clear that the ALJ gave Dr. Perry's assessment some weight because she incorporated into Plaintiff's RFC determination some of the limitations set forth in Dr. Perry's RFC Questionnaire (*see* Tr. 369). In particular, the ALJ accepted Dr. Perry's opinion(s) that Plaintiff is limited to the strength demands of sedentary work and that he can only sit or stand for a maximum of thirty (30) minutes at a time (Tr. 15). The ALJ otherwise rejected Dr. Perry's opinion(s) regarding limitations that would totally preclude Plaintiff from engaging in work activity. Such opinions relate to an issue that is specifically reserved to the Commissioner (Tr. 369-73), and for the reasons discussed more comprehensively below, the Court finds the ALJ properly declined to give Dr. Perry's opinion controlling weight in this regard (Tr. 15-17).

Even assuming the ALJ's statement that she gave "appropriate weight" to Dr. Perry's opinion(s) would not meet the Eleventh Circuit's specificity requirement with respect to what level of weight she afforded Dr. Perry's medical opinion, such error would be harmless in

18

this instance because, as noted above, the Court finds the ALJ's three stated reasons for attributing less than controlling weight to the opinions of Dr. Perry are supported by substantial evidence of record.

Specifically, the ALJ's first stated reason for not affording Dr. Perry's medical opinion(s) substantial or controlling weight is that his "treatment notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the [Plaintiff] were in fact disabled" (Tr. 16). This assertion by the ALJ is supported by the record. More particularly, Dr. Perry consistently noted that Plaintiff's extremities were within normal limits (Tr. 253-313, 334-40, 376-89). Dr. Perry never noted any findings such as loss of reflexes, sensation, or range of motion (*see* Tr. 253-313, 334-40, 376-89). The only objective laboratory results in Dr. Perry's records pertain to routine blood tests (*see* Tr. 260-61). In his RFC Questionnaire, Dr. Perry mentioned x-ray and MRI findings which revealed a bulging disc in Plaintiff's lumbar spine and degeneration in Plaintiff's knees (Tr. 369); however, as noted previously, such x-ray or MRI results do not appear in the record (*see* Tr. 253-313, 334-40, and 376-89). Furthermore, the MRIs and x-rays taken after Plaintiff's 1995 surgery showed no recurrent disc herniation or disc protrusions (*see* Tr. 232, 233, and 236). The most current imaging results in the record are those that were requested by Dr. Harper-Nimock, which revealed no significant abnormalities related to Plaintiff's lumbar spine or his left knee (Tr. 320-21). Therefore, the undersigned finds the ALJ's determination that Dr. Perry's opinion was unsubstantiated by any clinical or laboratory findings is supported by the record. *See Bloodsworth*, 703 F.2d at 1240.

The ALJ's second reason for not giving substantial or controlling weight to Dr. Perry's opinion(s) was that "the course of treatment pursued by Dr. Perry has not been

19

consistent with what one would expect if the [Plaintiff] were truly disabled" (Tr. 16).  This assertion is supported by the record because, as the ALJ noted, although Plaintiff's medical records show he has received treatment for allegedly disabling impairments, such treatment has been essentially routine and conservative in nature (Tr. 16).  For instance, despite Plaintiff's continuing complaint's of pain, Dr. Perry seldom changed his treatment recommendations or the medications he prescribed (Tr. 253-313, 334-40, 376-89).  Such conservative treatment belies Plaintiff's claim of debilitating pain, and undermines Dr. Perry's opinion that Plaintiff is in such severe pain that he is completely unable to work. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (finding substantial evidence to discredit Plaintiff's pain testimony where treatment was conservative).

Although Plaintiff testified Dr. Perry recommended he see a specialist (Tr. 45), none of Dr. Perry's medical records indicate that Dr. Perry ever referred Plaintiff for physical therapy or to a specialist (Tr. 253-313, 334-40, 376-89).  While Dr. Perry's assessment indicated that Plaintiff needed a cane or assistive device to walk (Tr. 372), Dr. Perry never noted problems with Plaintiff's gait or station, or recommended that Plaintiff use an assistive device (Tr. 253-313, 334-40, 376-89).  It should be noted that, in 2006, Plaintiff reported to a Social Security case developer that he does not need an assistive device to walk (Tr. 194).  Plaintiff also reported that he is able to walk around the grocery store for about an hour, and mow, weed-eat, blow, and rake his yard (Tr. 194).  Moreover, Dr. Harper-Nimock reported that Plaintiff walked without an assistive device (Tr. 317).

Additionally, in his disability application, Plaintiff reported that his prescribed medications were "very effective" in relieving his pain symptoms (Tr. 156).  Moreover, as noted above, Plaintiff consistently reported to Dr. Perry that his medications gave him good

20

pain relief (*see* Tr. 253-389).  Conditions amenable to treatment or adequately controlled by medication are generally not considered disabling.  *See, e.g., Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999) (ALJ's finding that the plaintiff was not disabled was supported by the fact that plaintiff's asthma and diabetes were controlled successfully by medication).

The ALJ's third and final reason for not attributing substantial or controlling weight to Dr. Perry's opinion was that "Dr. Perry's opinion is without support from the other evidence of record which renders it less persuasive" (Tr. 16).  Specifically, the ALJ points to Dr. Harper-Nimock's conclusions that correspond with the RFC finding, and to the two physicians employed by the State Disability Determination Services, Eric Puestow, M.D. ("Dr. Puestow") and Donald Morford, M.D. ("Dr. Morford"), whose RFC conclusions are coterminous with the ALJ's RFC determination (Tr. 16).

To illustrate, the most recent x-rays in the record were taken during Dr. Harper-Nimock's examination of Plaintiff in 2006 (Tr. 318).  The results of which were unremarkable as to Plaintiff's lumbar spine, and revealed no bony pathology in Plaintiff's left knee (Tr. 318).  These x-rays correspond with the MRI taken on August 15, 1996, which revealed no evidence of disc herniation or other abnormalities (Tr. 236).  Moreover, the x-ray results of Plaintiff's left knee, ordered by Dr. Bahri, were also normal (Tr. 25).  Dr. Harper-Nimock noted that Plaintiff's prognosis was fair and that he only had mild to moderate limitations for prolonged sitting, standing, walking, climbing, or heavy lifting (Tr. 318).  Dr. Harper-Nimock's opinions in this regard are consistent with the ALJ's RFC finding that Plaintiff can perform a limited range of sedentary work (Tr. 15).

Dr. Puestow stated that Plaintiff only has "mild to moderate exertional limitations" (Tr. 364), and Dr. Morford noted that Plaintiff's symptoms and complaints "seem to slightly

exceed objective findings . . ." (Tr. 331).   Additionally, both Drs. Lohse and Bahri recommend that Plaintiff follow a regular exercise program, and Dr. Bahri recommended that Plaintiff return to work (Tr. 237, 248, 250).   Even Dr. Perry, on at least three (3) occasions, indicated that he discussed weight management with Plaintiff and advised him to exercise (*see* Tr. 257, 263, 280).   The recommendations that Plaintiff stay active are inconsistent with the opinion(s) by Dr. Perry that Plaintiff has impairments that are totally and permanently debilitating (*see* Tr. 371, 373).   The opinions of Drs. Lohse and Bahri bolster the opinion of Dr. Harper-Nimock, who found Plaintiff's limitations were less extreme than Dr. Perry's assessment (Tr. 319).

The consistent examination findings and reviews of imaging studies conducted by the physicians noted above indicate Plaintiff is capable of work activity beyond the restrictive limitations that Dr. Perry noted in his assessment.   The records of these physicians are consistent with each other and constitute substantial evidence to support the ALJ's reasons for affording Dr. Perry's assessment less than controlling weight.   20 C.F.R. § 404.1527(d)(2).

In summary, since the ALJ noted Dr. Perry's opinions regarding the severity of Plaintiff's condition: (1) were not bolstered by the other medical evidence of record; (2) were, at times, contrary to the other record evidence; and (3) were inconsistent with his own level of treatment, the Court finds the ALJ provided the requisite good cause for assigning less than substantial or controlling weight to Dr. Perry's medical opinions regarding Plaintiff's inability to perform any work activity.   *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

## V. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and that it is supported by substantial evidence.   As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 29th day of September, 2010.

Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge